**[J-89-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No. 5 MAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Superior Court at No. 511 MDA |
| | : | 2022 entered on July 11, 2023 |
| | : | Affirming the Order of the |
| MANUEL ALEJANDRO RONDON | : | Cumberland County Court of |
| | : | Common Pleas at No. CP-21-CR- |
| | : | 0001073-2020 entered on March 8, |
| APPEAL OF: STEPHEN HOBBS, SURETY | : | 2022 |
| | : | |
| | : | ARGUED: November 19, 2024 |

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**JUSTICE McCAFFERY**                    **DECIDED: August 19, 2025**

Today, we are asked to construe the provisions of 42 Pa.C.S. § 5747.1, which governs forfeiture of bail proceedings. Section 5747.1 gives the lower court discretion to revoke a defendant's bail when the defendant "fails to appear for any scheduled court proceeding." *Id*. at (a). The section further directs the court to "set aside" the revocation under certain circumstances. *Id*. at (b)(2). Of most relevance to this appeal, if bail is "reinstated[,]" the court is prohibited from continuing a bail bondsman's suretyship on the reinstated bail absent written consent from the bail bondsman. *Id*.

The question we must answer is whether Section 5747.1's written consent requirement is triggered when the initial revocation of bail resulted from a breakdown in court administration. We conclude that written consent is required in those circumstances. While a breakdown in court administration is a valid excuse for a

defendant's failure to appear, it does not alter the basic fact that the defendant failed to appear for a scheduled proceeding. Further, under the facts presented here, the trial court clearly intended to reinstate bail for the defendant without a forfeiture — it did not void the original bail revocation — and acknowledged that the consent of the bail bondsman (Appellant Stephen Hobbs) was a necessary precondition to reinstatement of bail. Thus, the trial court erred in failing to obtain Hobbs's written consent before reinstating bail. Nonetheless, Hobbs did not timely appeal the order reinstating bail despite having at least constructive notice of the order. We thus conclude Hobbs is due no relief. So, while we disagree with the reasoning of the Superior Court, we affirm the result.

## I. Factual and Procedural History

The factual and procedural history of this case is largely undisputed. To the extent there are factual disputes, we note them where appropriate. Manuel Alejandro Rondon was arrested in May 2020 on charges of possession with intent to deliver heroin and fentanyl, as well as other, associated charges. The monetary condition of bail was initially set at $500,000. When Rondon could not post that amount, he moved to reduce bail. The bail authority granted the request and lowered the monetary condition to $75,000. With Hobbs's assistance, Rondon posted the required bail security on June 18, 2020. In executing the bail bond, Hobbs agreed he was liable for the full sum of $75,000 if Rondon failed to appear as required for any court proceeding.

Several months later, the court scheduled a pretrial conference for October 1, 2020. In short order, the court administrator rescheduled the conference for Tuesday, September 29th.

What happened next is disputed, but after a hearing, the trial court found that the court administrator informed Rondon's counsel that the pretrial conference had been

moved to Monday, October 5th. However, the court administrator failed to inform the trial judge of the rescheduled conference and also failed to record the new date on the docket. Thus, when Rondon and his counsel failed to appear on September 29th, the trial court issued a bench warrant for Rondon and revoked his bail. The written order indicates that Hobbs was served with the order revoking bail.

On Monday, October 5th, Rondon and his attorney attended a virtual meeting, held before a different trial judge. Rondon and his counsel believed they were attending the previously scheduled pretrial conference. When informed of the bail revocation and bench warrant, Rondon's counsel explained his confusion regarding the scheduling of the pretrial conference. The second judge accepted counsel's explanation and announced that she intended to vacate the bench warrant and reinstate bail. However, she acknowledged she could not reinstate bail for Rondon without first gaining the consent of Hobbs. Accordingly, she directed counsel to determine if Hobbs consented to the continuation of his suretyship.[1]

After a break, counsel returned and stated Hobbs consented to the continuation.[2] Further, counsel indicated that Hobbs had offered to fax or e-mail a written documentation of his consent. The trial judge determined that documentation was unnecessary, as she accepted counsel's representations as an officer of the court. Accordingly, the court "ordered that the bench warrant previously issued [was] vacated and bail [was] reinstated." Order of Court, 10/5/2020.

---

[1] We note that these proceedings were all held virtually due to the ongoing Covid-19 pandemic. The trial court does not assert these circumstances as an excuse for the breakdown in court operations or for its failure to gain written consent from Hobbs.

[2] The trial court, after a hearing on March 1, 2022, found Rondon's counsel credible when he testified that he had spoken with Hobbs's office on October 5, 2020. *See* Trial Court Opinion, 6/30/2022, at 2 n.5.

For the next five months, the case proceeded along the normal course. Rondon's counsel sought suppression of both physical evidence and statements made by Rondon after his arrest. The trial court denied suppression, and after several continuances, Rondon retained new counsel in March 2021. On June 22, 2021, the trial court denied Rondon's request for a continuance and directed him to appear for trial on Monday, July 12, 2021. Rondon failed to appear on that date, and the trial court entered an order issuing a bench warrant and revoking Rondon's bail. *See* Order of Court, 7/12/2021.

The court also issued and served on Hobbs a form order informing Hobbs that Rondon had failed to appear, his bail was revoked, and the "monetary condition of release in the amount of $75[,]000.00 may be forfeited." Notice of Revocation and Intent to Forfeit Bail, 7/19/2021. In bold type, the notice indicated that "according to 42 Pa.C.S. § 5747.1(b)(3), 'Failure to render payment of the forfeited undertaking by the close of business on the 91st day shall bar any right of remission to collect funds pursuant to the forfeited untertakings' if the Defendant is recovered from the 91st day to 2 years." *Id*.

The record reflects, and Hobbs does not dispute, that Hobbs made no effort to withdraw his surety bond before October 13, 2021. *See* Hobbs's Principal Brief at 10. On that date, Hobbs filed a petition to strike or set aside the bail forfeiture, asserting that the trial court failed to obtain his written consent to continue as surety after Rondon's bail was reinstated on October 5, 2020. *See* Petition to Strike and/or Set Aside Bail and Forfeiture and Exonerate Surety, at ¶ 7. Further, he indicated that the County did not oppose the requested relief. *See id*. at ¶ 9. After a hearing, the trial court denied Hobbs's petition. *See* Order of Court, 3/1/2022.

## II. Superior Court Decision

In a unanimous, published opinion, the Superior Court affirmed. *See Commonwealth v. Rondon*, 298 A.3d 1135 (Pa. Super. 2023). The panel agreed with the

trial court that Rondon did not "fail to appear" since a breakdown in court operations had led him to believe the pretrial conference had been rescheduled. *Id*. at 1139. As a result, the revocation of bail was not caused by Rondon, but by court error. *See id*. at 1140. The panel concluded that requiring the consent of Hobbs to reinstate bail would be an "absurd result." *Id*. (citation omitted). Due to this absurdity, the panel determined "the plain language of the statute does not contemplate that the trial court must secure the written consent of the bail bondsman in order to continue suretyship where the initial forfeiture of bail was due to a court error." *See id*. at 1139-1140.

## III. Issue and Standard of Review

This Court granted Hobbs's petition for allowance of appeal, limited to the following question:

> Is the written consent requirement of 42 Pa.C.S. § 5747.1(b)(2) triggered when the court's revocation and forfeiture of a defendant's bail was the result of a court error?

*Commonwealth v. Rondon*, 312 A.3d 316 (*per curiam* order).

Hobbs's issue explicitly requires us to interpret 42 Pa.C.S. § 5747.1. In construing a statute, we seek to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The primary indicator of the Legislature's intent is the statute's plain language. *See Commonwealth v. Lehman*, 311 A.3d 1034, 1044 (Pa. 2024) (citation omitted). To interpret the meaning of words that the statute does not explicitly define, "we turn to an examination of dictionary definitions." *Ursinus College v. Prevailing Wage Appeals Board*, 310 A.3d 154, 171 (Pa. 2024) (internal quotation marks and citation omitted). If the plain language is clear and unambiguous, that unambiguous interpretation controls. *See Lehman,* 311 A.3d at 1044.

On the other hand, if the plain language is ambiguous, we must go beyond the text and consider other factors. *See A.S. v. Pennsylvania State Police*, 143 A.3d 896, 903 (Pa. 2016). These factors include, but are not limited to:

the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute.

*Id*. (citation omitted).

## IV. Statutory Construction of 42 Pa.C.S. § 5747.1

We begin by noting that Section 5747.1 provides a calendar for the bail revocation process.[3] This calendar starts with subsection (a), which details when bail may be revoked and that a bail revocation order serves as notice of intent to forfeit the monetary condition of bail:

If a defendant in a criminal prosecution fails to appear for any scheduled court proceeding, the defendant's bail may be revoked and notice of revocation shall serve as notice of intent to forfeit the bail of the defendant. The notice of order of revocation shall be served by the office of the clerk to the defendant, surety, or bail bondsman and insurer who has issued the qualifying power of attorney for the bail bondsman by certified mail, return receipt requested.

42 Pa.C.S. § 5747.1(a). Subsection (b)(2) begins by referring to a "forfeited undertaking" and "the notice of revocation[,]" both of which necessarily refer back to subsection (a):

Payment of forfeited undertaking shall be made directly to the office of the clerk not later than the close of business on the 91st day following the

---

[3] We further note that our Rules of Criminal Procedure also purport to govern the bail revocation process. *See* Pa.R.Crim.P. 536. While largely harmonized, there are possible tensions between Section 5747.1 and Rule 536 (*i.e.*, Rule 536 does not distinguish between sureties and bail bondsmen). None of these tensions are relevant to the current appeal, so our decision should not be construed as resolving them.

service of the notice of revocation. If the defendant has been recovered and placed into custody through the efforts of the bail bondsman or proof has been provided to the court that the defendant was discovered by the bail bondsman to be in custody in another jurisdiction prior to the 91st day, no payment of the forfeited undertaking shall be required. If the defendant is placed into custody or discovered to be in custody, the court shall set aside the bail revocation and may release the defendant with the reinstitution of bail pursuant to the Pennsylvania Rules of Criminal Procedure. The bail bondsman shall not be continued by the court as surety on reinstated bail unless a written consent is signed by the bail bondsman agreeing to such extension of suretyship.

42 Pa.C.S. § 5747.1(b)(2). Accordingly, interpretation of subsection (b)(2) requires an understanding of the process as laid out by Section 5747.1 in its entirety.

As noted, bail revocation and forfeiture proceedings under Section 5747.1 begin when "a defendant … fails to appear."[4] 42 Pa.C.S. § 5747.1(a). When a defendant fails to appear, the court may revoke the defendant's bail. *See id*. The revocation must be served on "the defendant, surety or bail bondsman and insurer who has issued the qualifying power of attorney for the bail bondsman[,]" and "shall serve as notice of intent to forfeit" the monetary condition of bail. *Id*. Here, we observe the Legislature has explicitly defined both "bail bondsman" and "surety[:]"

"Bail bondsman." A person who engages in the business of giving bail as a surety for compensation.

…

---

[4] For violations of other conditions of bail, third party sureties, including bail bondsmen, are not subject to forfeiture of the monetary condition of bail. *See* 42 Pa.C.S. § 5747.1(b)(6). Instead, they may be subject to fines and bail bondsman license revocation if they knowingly fail to report a violation to the appropriate law enforcement agency. *See* 42 Pa.C.S. § 5750. In contrast, the defendant himself may be convicted for indirect contempt of court based on the violation of any other bail condition, *see* 42 Pa.C.S. § 5747.1(b)(6), and may be subject to forfeiture of the monetary condition of bail as well. *See* 42 Pa.C.S. § 5747.1(d) ("Nothing under this section shall preclude the attorney for the Commonwealth from seeking a bail forfeiture directly from the defendant.").

"Surety." A person who pledges security, whether or not for compensation, in exchange for the release from custody of a person charged with a crime prior to adjudication.

42 Pa.C.S. § 5741. From these definitions, we discern that a "bail bondsman" is a subcategory of "surety:" both are third parties who supply security to release a defendant on bail, but only a "bail bondsman" does so for compensation as a business model. There is no dispute, for purposes of this appeal, that Hobbs is a "bail bondsman."

The date the surety or bail bondsman is served with the notice of intent to forfeit is day zero for the Section 5747.1 timeline. *See* 42 Pa.C.S. § 5747.1(b)(1). On day 90, "the revocation shall become a judgment of forfeiture, payment of which shall be immediately required by the defendant or the surety." 42 Pa.C.S. § 5747.1(b)(2). To wit, the payment must be made by the close of business on day 91, or else the liable party (the surety or bail bondsman and insurer who has issued the qualifying power of attorney for the bail bondsman) loses the right to seek remission of the forfeited bail. *See* 42 Pa.C.S. § 5747.1(b)(3).[5]

The judgment of forfeiture can be avoided prior to day 91 under certain circumstances:

If the defendant has been recovered and placed into custody through the efforts of the bail bondsman or proof has been provided to the court that the defendant was discovered by the bail bondsman to be in custody in another jurisdiction prior to the 91st day, no payment of the forfeited undertaking shall be required.

42 Pa.C.S. § 5747.1(b)(2).[6] The statute does not explicitly provide for any right of remission prior to the 91st day for sureties other than bail bondsmen.

---

[5] Bail bondsmen, such as Hobbs, may be subject to further penalties. *See* 42 Pa.C.S. § 5747.1(b)(2) (stating that if a bail bondsman fails to make a "timely" payment on the judgment, the appropriate district attorney or county solicitor is directed to pursue suspension or non-renewal of the bail bondsman's license).

[6] We discern no statutory language that supports the Concurring and Dissenting opinion's conclusion that the bail revocation must be declared void *ab initio*. Instead, as the plain (continued…)

If the defendant is "recovered" after day 91, "a surety may petition the court … to remit all or a portion" of the forfeited bail. 42 Pa.C.S. § 5747.1(b)(5). The surety is entitled to the full amount of the forfeited bond, minus $250, if the defendant is recovered after 91 days but before six months. *See* 42 Pa.C.S. § 5747.1(b)(5)(i). If the defendant is recovered between six months and one year, the surety is entitled to 80% of the amount of the forfeited bond. *See* 42 Pa.C.S. § 5747.1(b)(5)(ii). If the defendant is recovered between one and two years, the surety is entitled to 50% of the amount of the forfeited bond. *See* 42 Pa.C.S. § 5747.1(b)(5)(iii). Notably, unlike subsection (b)(2), all sureties, not just bail bondsmen, are entitled to remission under the subsection (b)(5) schedule.

## V. Whether Rondon "Failed to Appear"

Returning to the case before us, three operative facts are undisputed: (1) Hobbs is a bail bondsman under the statute; (2) Rondon was returned to the custody of the court before the 91st day; and (3) Rondon's return was not secured through Hobbs's efforts. The Attorney General argues that both the trial court and the Superior Court correctly recognized that Rondon never "fail[ed] to appear."[7] Amicus Brief of Attorney General at 14. Thus, according to the Attorney General, Section 5747.1's provisions were never invoked. *See id*.

The Attorney General's argument is belied by the record. The September 30, 2020 order had two components. First, it issued a bench warrant for Rondon. Second, it directed that "[a]ny previous bail is forfeited." Order of Court, 9/30/2020. The subsequent order, entered by a second, different judge, on October 5, 2020, vacated the bench warrant and "reinstated" bail. The October 5th order did not vacate the bail forfeiture.

---

language sets forth, the bail authority must "set aside" the revocation and cannot require "payment of the forfeited undertaking[.]" 42 Pa.C.S.A. § 5747.1(b)(2).

[7] Cumberland County declined to take a position in this appeal. In our order granting allowance of appeal, we invited the Attorney General to participate as *amicus curiae*.

And there is no indication in the record that the second judge intended to vacate the bail forfeiture; rather, the record indicates the judge clearly understood that Hobbs's consent was required to reinstate bail:

> THE COURT: The new rules - - sir, did you have a conversation with his bail bondsman about whether he would be willing to stand by the bail?
>
> [COUNSEL:] I have not yet, judge.
>
> THE COURT: I should have started with that. I cannot under the bail bonds rules, they got that accomplished, I can't do anything with his bail unless his bail bondsman is given an opportunity to be heard. So you have to give him or her a call and see if they are willing to stand by the bail and let me know that. I will give you some time to do that. I can't handle the bench warrant until I know that.

N.T. 10/5/2020, Request ID: 4124, at 5.[8]

Further, we note that there is no contention that the September 30th order was the result of a mistake that is evident from the face of the order or the record. *See Commonwealth v. Holmes*, 933 A.2d 57 (Pa. 2007) (permitting a trial court to correct an error that is obvious on the face of the record). Neither party asserts that, on September 30th, the court was aware of the breakdown in court operations. Rather, the confusion caused by the court administrator was only brought to the court's attention on October 5th. Under these circumstances, the September 30th order was valid when issued.[9]

---

[8] There are two transcripts from the October 5th proceedings — one transcript detailing the discussion before counsel contacted Hobbs, and one transcript of the proceedings after counsel contacted Hobbs. We utilize the "Request ID" of each transcript to differentiate between the two, as there is no other explicit distinction on the cover page of each.

[9] The Concurring and Dissenting opinion would prefer to interpret the statute such that the written consent requirement applies only if bail is revoked because the defendant **chose** not to attend a scheduled court date. *See* CDO at 11. Try as we might, we cannot locate this language in the statute as written. Instead, the statute identifies the precondition as "**If a defendant** in a criminal prosecution **fails to appear** for any scheduled court proceeding[.]" 42 Pa.C.S. § 5474.1(a). While we may agree, as a matter (continued…)

Once Rondon presented evidence of the breakdown in court operations, the trial court was authorized to exercise its equitable powers to vacate the bench warrant and reinstate bail. But it could not, and indeed did not, indicate that it intended to "correct" the September 30th order.

Accepting the Attorney General's position could have unintended consequences: what if a law enforcement officer had executed the bench warrant before October 5 and apprehended Rondon? Would the court's subsequent acceptance of Rondon's excuse for non-appearance render the arrest illegal? There is no reason to inject uncertainty into the process when it is clear the October 5th order did not "void" the bail forfeiture notice, but rather "reinstated" bail.

## VI. Whether Hobbs's Written Consent was Necessary to Reinstate Rondon's Bail

Hobbs argues that the statute unambiguously requires the court to obtain his written consent to continue as surety after bail has been reinstated. The Attorney General counters by asserting that Section 5747.1(b)(2)'s written consent requirement must be restricted to circumstances where the defendant's recovery is secured through the efforts of a bail bondsman. Since, as set forth above, it is undisputed that Rondon's recovery was not secured through Hobbs's efforts, the Attorney General posits that written consent was not required.

Both arguments have facial validity. Subsection (b)(2), when read in isolation, could support the Attorney General's inference. Two of the four sentences in the subsection explicitly reference "the bail bondsman." Further, the remaining two sentences are written in the passive voice, thereby obscuring who is acting: "Payment of forfeited undertaking shall be made …."; and "If the defendant is placed into custody or

---

of policy, that a defendant should not suffer the possible loss of bail under circumstances where he did not intentionally fail to appear, we are not free to ignore the plain language utilized by the Legislature in an effort to attain our preferred policy outcome.

discovered to be in custody ….” 42 Pa.C.S. § 5747.1(b)(2). The Attorney General urges us to interpret Subsection (b)(2) such that every provision in the section is restricted to situations where a bail bondsman recovers or locates the defendant. Thus, the Attorney General asserts that the fourth sentence of the subsection would be best interpreted as follows: If the defendant is placed into custody or discovered to be in custody [by the bail bondsman's efforts], the court shall set aside the bail revocation and may release the defendant with the reinstitution of bail pursuant to the Pennsylvania Rules of Criminal Procedure.

In contrast, Hobbs encourages us to focus solely on the fourth and final sentence of Subsection 5747.1(b)(2), which sets forth the written consent requirement: “The bail bondsman shall not be continued by the court as surety on the reinstated bail unless a written consent is signed by the bail bondsman agreeing to such extension of suretyship.” 42 Pa.C.S. § 5747.1(b)(2). Hobbs correctly observes that there is no language in the sentence which limits its application to situations where the bail bondsman secures or locates the defendant.

The clash between the Attorney General's position and Hobbs's position is perhaps best described as a disagreement about whether this Court must focus only on the operative sentence in isolation (Hobbs), or instead focus only on the subsection in isolation (Attorney General). We conclude that both arguments miss the forest for the trees.

Since both constructions are reasonable — *i.e.* it is not clear if written consent is necessary when a defendant is recovered through means other than the efforts of a bail bondsman — the statutory language is ambiguous. We therefore must consider the occasion and circumstances under which the statute was enacted as well as the mischief to be remedied and the consequences of a particular interpretation. In this regard, it is of

note that Act 16 of 2015, which created Section 5747.1 as part of a comprehensive treatment of bail bondsmen, was enacted shortly after this Court's decision in *Commonwealth v. Hann*, 81 A.3d 57 (Pa. 2013). There, we addressed a bail bondsman's liability for a defendant's breach of a bail condition other than non-appearance. *Id*. at 61. Specifically, the Commonwealth sought forfeiture of a $100,000 bond supplied by a bail bondsman when the defendant murdered his ex-girlfriend and committed suicide while at liberty on bail. *Id*. Applying the contemporaneous version of Pa.R.Crim.P. 536 and primarily foreign precedent, this Court engaged in a totality of the circumstances analysis and opined that the surety's status as a bail bondsman "lean[s] in favor of forfeiture" of the monetary condition of bail. *Id*. at 69. Further, we held that "upon the government's showing that a defendant breached a condition of a bail bond, the burden then shift[s] to the defendant or surety to prove that forfeiture was not warranted." *Id*. Act 16 of 2015 was enacted approximately 20 months later and contains many provision that are contrary to our holding in *Hann*.

From this, we conclude that through Act 16 of 2015, the legislature had several interrelated goals. First, the legislature desired to reject several aspects of our holding in *Hann*. Perhaps foremost among the rejected holdings was our observation that a surety's status as a bail bondsman weighed in favor of forfeiture of the monetary condition of bail. Instead, Act 16 of 2015 limits forfeiture of a surety's bond solely to violations based upon a failure to appear. *See* 42 Pa.C.S. § 5747.1(b)(6). For violations other than non-appearance, bail bondsmen are subjected to professional license revocation and monetary fines that are between $500 and $5,000. *See* 42 Pa.C.S. § 5750.

Additionally, Act 16 rejected *Hann*'s burden-shifting test regarding remission of forfeiture. Under *Hann*, the Commonwealth bore the burden to establish a violation of a bail condition by a preponderance of the evidence. *See Hann*, 81 A.3d at 72. Once a

violation was established, the defendant or surety was required to establish that justice did not require full forfeiture by a preponderance of the evidence. *See id*. In place of this paradigm, Act 16 provides for bright-line time-based reductions in the amount of money forfeited by sureties when a defendant fails to appear. *See* 42 Pa.C.S. 5747.1(b)(2) and (6). For example, if a defendant is recovered three months after forfeiture, a surety is entitled to remission of the full value of the forfeited bond less $250. *See* 42 Pa.C.S. § 5747.1(b)(5)(i). However, if the defendant is not recovered until nine months after forfeiture, the surety's entitlement to remission is reduced to 80% of the forfeited bond. *See* 42 Pa.C.S. § 5747.1(b)(5)(ii).

This Court has long recognized that bail serves important foundational principles in our system of law:

> The fundamental purpose of bail is to secure the presence of the accused at trial. However, in the absence of evidence the accused will flee, certain basic principles of our criminal law indicate bail should be granted, these are: (a) the importance of the presumption of innocence; (b) the distaste for the imposition of sanctions prior to trial and conviction; and (c) the desire to give the accused the maximum opportunity to prepare his defense.

*Commonwealth v. Truesdale*, 296 A.2d 829, 834-835 (Pa. 1972). Through Act 16, the legislature clearly intended to reduce the risk faced by third-party sureties in supplying a bail bond, thereby making bail affordable to more defendants.

Act 16's provisions also demonstrate the legislature's second related goal: incentivizing quick recovery of absent defendants. The scheme, set forth in Section 5747.1(b), reduces the amount of remission a surety is entitled to as the time between forfeiture and recovery increases. This sliding scale of remission indicates a preference for quick recovery of absconding defendants.

With these purposes in mind, we turn to the specifics of Act 16's structure. Section 5747.1(a) provides that a court may revoke the bail of a defendant who does not appear

for a required proceeding. Further, the bail revocation constitutes notice of intent to forfeit bail, and 90 days after that notice is served on the appropriate party, the notice automatically becomes a judgment of forfeiture. *See* 42 Pa.C.S. § 5747.1(b)(1). Read in isolation, subsections (a) and (b)(1) provide no explicit mechanism for avoiding the entry of the judgment of forfeiture.

The second sentence of Subsection (b)(2), when read in isolation, provides a mechanism for a bail bondsman, and only a bail bondsman, to avoid the entry of the judgment of forfeiture:

> If the defendant has been recovered and placed into custody through the efforts of the bail bondsman or proof has been provided to the court that the defendant was discovered by the bail bondsman to be in custody in another jurisdiction prior to the 91st day, no payment of the forfeited undertaking shall be required.

42 Pa.C.S. § 5747.1(b)(2).

The third sentence — "If the defendant is placed into custody or discovered to be in custody, the court shall set aside the bail revocation and may release the defendant with the reinstitution of bail pursuant to the Pennsylvania Rules of Criminal Procedure" — requires the court to set aside the bail revocation and allows the court to release the defendant by reinstating bail pursuant to the Rules of Criminal Procedure. *Id*. Read in isolation, this sentence is not limited to bail bondsmen, but also does not have any reference to time. Thus, taken literally, the third sentence of Subsection (b)(2) directs the court to set aside the bail revocation no matter when the defendant is placed into, or discovered to be in, custody, rendering the second sentence utterly superfluous. Even more troubling, a literal reading of the third sentence in isolation would render the entirety of Subsection (b)(5) superfluous.

If we accept Hobbs's suggestion that each sentence in Subsection (b)(2) is an island, the third sentence requires a trial court to set aside the bail revocation no matter

when the defendant was recovered. As this contradicts the explicit provisions of other sentences in Subsection (b)(2) as well as the entirety of Subsection (b)(5), this quite clearly is not what the Legislature intended. *See* 1 Pa.C.S. § 1922 ("the General Assembly intends the entire statute to be effective and certain").

Similarly, if we accept the Attorney General's preferred construction, Subsection (b)(2) applies only to bail bondsmen; other third-party sureties gain no benefit from the 90-day period before the notice of forfeiture automatically becomes a judgment of forfeiture:

> If the defendant has been recovered and placed into custody through the efforts of the bail bondsman or proof has been provided to the court that the defendant was discovered by the bail bondsman to be in custody in another jurisdiction prior to the 91st day, no payment of the forfeited undertaking shall be required.

42 Pa.C.S. § 5747.1(b)(2). It is possible to find reasons why the Legislature may have desired this result. However, viewing the statute as a whole, it would be absurd to conclude the Legislature intended such a result. To illustrate the absurdity of this construction, consider what would happen if a non-bail bondsman surety located the defendant thirty days after bail was revoked for non-appearance. If we interpret Subsection (b)(2) in accord with the Attorney General, such a surety could not benefit from placing the defendant in the court's custody before 90 days. Instead, that surety only has a statutory remedy *after* 91 days have elapsed.[10] Further illustrating the

---

[10] Contrary to the Concurring and Dissenting opinion's strained interpretation of our analysis, we do not conclude that it would be absurd for the Legislature to choose to withhold a remedy to non-bail bondsmen sureties. *See* fn. 11, *infra*. Rather, our conclusion rests entirely on the incentives that are created under the Concurring and Dissenting opinion's preferred construction: non-bail bondsmen sureties are better off not returning a bail-jumper immediately, but instead waiting until **after** 90 days when they have an explicit right to remission of a substantial portion of the forfeited bond. This result is contrary to common sense, let alone the clear intent of the Legislature in enacting Section 5747.1.

problem, only defendants who contract with a bail bondsman, and whose return to court is secured through the efforts of the bail bondsman, can have bail reinstated without any forfeiture if they submit to the custody of the court within 90 days. This result is contrary to the point of Subsection (b)(2) and Subsection (b)(5), both of which prioritize the timely recovery of defendants, as well as goal of reducing the risk born by third-party sureties.

Indeed, the clear intent of Section 5747.1 is to provide incentives for quickly returning bail jumpers to the jurisdiction of the court, while providing sufficient predictability for sureties to ensure bail is a realistic option for those defendants who are detained pre-trial. Thus, contrary to the parties' arguments, the proper construction of Subsection (b)(2) recognizes that the third sentence, written in the passive voice, requires a court to set aside the bail revocation, and allows for reinstatement of bail without forfeiture, at the court's discretion, no matter how the defendant is recovered: "If the defendant is placed into custody or discovered to be in custody, the court shall set aside the bail revocation and may release the defendant with the reinstitution of bail pursuant to the Pennsylvania Rules of Criminal Procedure." From the second sentence and Subsection (b)(5), we infer that the third sentence applies only to recoveries that occur before the 91st day. Thus, a court may reinstate bail with no forfeiture of the monetary condition of bail regardless of how the defendant was recovered, so long as it is before the 91st day. In turn, the fourth sentence, which contains the written consent requirement, applies to bail bondsmen whenever bail is "reinstated[]" pursuant to the third sentence.[11]

Here, as noted above, Rondon's bail was revoked for non-appearance, placing Hobbs's bond in jeopardy. However, less than a week later, Rondon was "recovered," as he appeared before the trial court, albeit a different judge. The trial court was therefore

---

[11] The fourth sentence explicitly applies only to bail bondsmen. As the issue of whether a court must obtain written consent of other third-party sureties before reinstating bail is not before us, we do not reach that issue today.

required to set aside the bail revocation and was permitted to reinstate bail for Rondon. However, as even the trial court acknowledged, Hobbs's consent was necessary before continuing Hobbs's bond. Unfortunately, the trial court failed to recognize that this consent was required to be in writing. Since the trial court did not obtain written consent from Hobbs, the trial court erred by continuing Hobbs's bond on the reinstated bail.

## VII. Whether Hobbs Appealed From the Proper Order

Nevertheless, it is important to note that Hobbs's complaint is directed at the October 5, 2020 order reinstating bail, not the March 1, 2022 order from which he actually appealed. It is the October 5, 2020 order that constitutes trial court error, and Hobbs had an obligation to seek specialized review of that order within 30 days. *See* Pa.R.A.P. 1602 (adopted Jan. 7, 2020, effective Aug. 1, 2020). Although the record does not indicate whether Hobbs was served with the October 5th order, he was clearly served with the September 29, 2020 order forfeiting Rondon's bail.[12] He therefore was on notice that, absent further action by the court, Rondon's bail bond would be forfeited 90 days after September 29th, or December 28, 2020. Since the bail bond was not forfeited for another

---

[12] The Attorney General asserts that Hobbs was judicially estopped from asserting a challenge to the October 5 order because **Rondon**'s counsel informed the trial court that Hobbs consented to the reinstatement of bail. The doctrine of judicial estoppel provides that, "[a]s a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." *In re Adoption of S.A.J.*, 838 A.2d 616, 620 (Pa. 2003) (citation and footnote omitted). "[W]hen a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards." *Id*. Neither Hobbs nor any agent of Hobbs appeared in court or made any assertions on October 5, 2020. Rather, the assertion of fact at issue was made by Rondon's counsel. There is no evidence in the record capable of establishing that Hobbs had granted Rondon's counsel power to bind Hobbs. Thus, the doctrine of judicial estoppel is not applicable since neither Hobbs nor his agent made any representation in court.

Further, this is precisely the reason the Legislature chose to require **written** consent under these circumstances – to avoid subsequent litigation over whether consent was actually given. The application of judicial estoppel would create a loophole in the statute that has no grounding in the explicit language of the statute.

nine months, and the bail bond was not otherwise released, Hobbs was constructively on notice that the court had reinstated bail by December 28, 2020. As a result, even if, contrary to the trial court's findings, Hobbs was not immediately aware of the reinstatement in October, he was aware of the trial court's error by the end of December 2020 and required to promptly file a petition for *nunc pro tunc* relief from the October 5, 2020 order reinstating bail. Hobbs's Petition to Strike and/or Set Aside Bail and Forfeiture did not explicitly seek *nunc pro tunc* relief from the October 5, 2020 order. Further, the petition was not promptly filed, as Hobbs did not file it until October 25, 2021 — nearly nine months after he had constructive notice of the forfeiture. As a result, Hobbs cannot now challenge the October 5, 2020 order which reinstated bail without his written consent.

## VIII. Conclusion

In summary, we conclude: (1) Rondon's bail was properly revoked on September 29, 2020; (2) Rondon's bail was reinstated without the required written consent of Hobbs on October 5, 2020; but (3) nevertheless, Hobbs is due no relief in this appeal since he failed to timely seek review of the October 5, 2020 order. Therefore, we affirm the decision of the Superior Court, finding Hobbs is not entitled to relief, but we do so on a different basis, namely, that Hobbs failed to file a timely appeal.

Order affirmed.

Justice Mundy joins the Opinion Announcing the Judgment of the Court and Justice Brobson joins Parts I-III and VII only of the Opinion Announcing the Judgment of the Court.

Justice Wecht files a concurring and dissenting opinion in which Chief Justice Todd and Justice Donohue join.

Justice Dougherty did not participate in the decision of this matter.